# 16-454

## United States Court of Appeals

*for the*

## Second Circuit

STUART SANSEVIRO,

Plaintiff - Appellant,

v.

STATE OF NEW YORK, EDWARD FRANKE, NEW YORK STATE POLICE
INVESTIGATOR, JOHN DOES, 1-5 NEW YORK STATE POLICE OFFICERS, NEW
YORK STATE POLICE DEPARTMENT, STATE OF NEW YORK, POLICE
CAPTAIN, STATE OF NEW YORK, POLICE SENIOR INVESTIGATOR, JOHN
DOES, 1-5 NASSAU COUNTY ASSISTANT DISTRICT ATTORNEYS, JOHN DOE,
THE CUSTOMER WHO PURCHASED THE ROCK RIVER ARMS LAR-15 RIFLE,
SERIAL NUMBER CM208678, NASSAU COUNTY, JOHN DOES, 1-8 NEW YORK
STATE POLICE INVESTIGATOR, MADELINE SINGAS, ACTING DISTRICT
ATTORNEY FOR NASSAU COUNTY, ELISE MCCARTHY, NASSAU COUNTY
ASSISTANT DISTRICT ATTORNEY, KAREN BENNETT, NASSAU COUNTY
ASSISTANT DISTRICT ATTORNEY, TERESA CORRIGAN, FORMER NASSAU
COUNTY ASSISTANT DISTRICT ATTORNEY, CHARLES RIBANDO, NASSAU
COUNTY DISTRICT ATTORNEY CHIEF INVESTIGATOR,

Defendants - Appellees.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

## BRIEF OF NASSAU COUNTY
## DEFENDANTS-APPELLEES

CARNELL T. FOSKEY
Nassau County Attorney
*Attorney for Nassau County Defendants-Appellees*
One West Street
Mineola, New York 11501
(516) 571-3954

Of Counsel:
Robert F. Van der Waag
Deputy County Attorney

## TABLE OF CONTENTS

PAGE

Table of Authorities…………………………………………………………………….iii

Preliminary Statement……………………………………………………………...1

OVERVIEW………………………………………………………………………..2

Statement of Facts …………………………………………………………………4

THE DECISION……………………………………………………………………9

Legal Standard for Summary Judgment……………………………………………9

POINT I
ALL COUNTY DEFENDANTS ARE ENTITLED TO
ABSOLUTE IMMUNITY AGAINST ALL CLAIMS
ASSERTED AGAINST THEM……………………………………………………..11

POINT II
EVEN IF THE COUNTY DEFENDANTS ARE NOT PROTECTED BY
ABSOLUTE IMMUNITY, THEY ARE PROTECTED BY QUALIFIED
IMMUNITY…………………………………………………………………………19

POINT III
THE COUNTY DEFENDANTS CANNOT
BE LIABLE FOR FALSE ARREST………………………………………………...23

POINT IV
THE COUNTY DEFENDANTS CANNOT
BE LIABLE FOR MALICIOUS PROSECUTION………………………………….24

POINT V
THE FAILURE TO SUPERVISE CLAIMS SHOULD BE DISMISSED……….26

POINT VI
THERE IS NO MONELL CLAIM…………………………………………………..30

POINT VII
IT WAS RIGHT TO DISMISS THE STATE CLAIMS…………………………33

SUMMARY……………………………………………………………………….35

CONCLUSION……………………………………………………………...37

CERTIFICATE OF COMPLIANCE…………………………………………...38

TABLE OF AUTHORITIES

CASES                                                        PAGE

*Anderson v. Liberty Lobby*, Inc., 477 U.S. 242 (1986)………………………..9, 10, 20

*Anilao v. Spota*, 774 F. Supp.2d 457 (E.D.N.Y. 2011)…………………....15, 18

*Ashcroft v. al-Kidd*, U.S.--, 131 S.Ct. 2074 (2011)……………………………..20

*Batista v. Rodriguez*, 702 F.2d 393 (2d Cir. 1983)……………………………32, 33

*Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004)………………………18

*Bertuglia v. City of New York*, 839 F.Supp.2d 703 (S.D.N.Y. 2012)……………16

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)…………………………………...15, 18

*Burns v. Reed*, 500 U.S. 478, 486 (1991)…………………………………………13, 14

*Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011)
cert. denied, U.S. , 132 S.Ct. 1741 (2012)…………………………………...........30

*Castellano v. Bd. of Trustees*, 937 F.2d 752 (2d Cir. 1991)……………………...34

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………10

*City of Canton v. Harris*, 489 U.S. 378 (1989)…………………….......27, 28, 33

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)……………………………32

*Connick v. Thompson*, 131 S.Ct. 13500 (2011)………………………………...29, 30

*Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010),
cert. denied sub nom…………………………………………………………………11

*Cornejo v. Monn*,131 S.Ct. 158 (2010)……………………………………………11

*Crews v. County of Nassau*, 2007 WL 4591325 (E.D.N.Y. Dec. 27, 2007)……...12

*Del Col v. Rice*, 2012 WL 6589839, at *4 (E.D.N.Y. Dec. 18, 2012)…………...13

*Deronette v. City of New York*, 2007 WL 951925 (E.D.N.Y. Mar. 27, 2007)……12

*DiStiso v. Cook*, 691 F.3d 226 (2d Cir. 2012)……………………………………21

*Dory v. Ryan*, 25 F.3d 81 (2d Cir. 1994)………………………………………14, 18

*Fabrikantv. French*, 691 F.3d 193 (2d Cir. 2012)………………………………...20

*Giraldo v. Kessler*, 694 F.3d 161 (2d Cir. 2012)……………………..13, 14, 16, 17

*Goenaga v. March of Dimes Birth Defects Found*,
51 F.3d 14 (2d Cir. 1995)…………………………………………………………10

*Gottlieb v. Cnty. of Orange*, 84 F.3d 511 (2d Cir. 1996)…………………………10

*Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000)………………………………...34

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)………………………………………20

*Hill v. City of New York*, 45 F.3d 653 (2d Cir. 1995)………………………..passim

*Hope v. Pelzer*, 536 U.S. 730 (2002)……………………………………...……….21

*Imbler v. Pachtman*, 424 U.S. 409 (1976)………………………………...…12, 13, 14

*Jackson v. Seewald*, 2013 WL 149341, at *7 (E.D.N.Y. Jan. 14, 2013)……...13, 18

*Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007)………………………...28, 29

*Johnson v. City of New York*, 2011 WL 666161 (S.D.N.Y. 2011)……………..…33

*Kent v. Cardone*, 404 Fed. Appx. 540 (2d Cir. 2011)…………………….........18

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996)……………………..25

*Malley v. Briggs*, 475 U.S. 335 (1986)……………………………………………20

Manganiello v. City of New York, 612 F.3d 149 (2d Cir. 2010)…………….25, 26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)…..10

*Messerschmidt v. Millender*,-U.S.--, 132 S.Ct. 1235 (2012)……………………..21

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)…………………………………………13

*Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658 (1978)…………..passim

*Motorola Credit Corporation v. Uzan*, 388 F.3d 39 (2d Cir. 2004)……………....34

*Munafo v. Metropolitan Transportation Authority*,
285 F.3d 201 (2d Cir. 2002)…………………………………………………..20, 23

*Pacicca v. Stead*, 456 Fed. Appx. 9 (2d Cir. 2011)……………………………...25

*Pearson v. Callahan*, 555 U.S. 223 (2009)………………………………………20

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)……………………………28

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002)……………………10

*Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995)……………………….15

*Pitchell v. Callan*, 13 F.3d 545 (2d Cir. 1994)…………………………….....…11

*Reichle v. Howards*,-U.S. -- , 132 S.Ct. 2088, 2093 (2012)………………………20

*Reynolds v. Giuliani*, 506 F.3d 183 (2d Cir. 2007)…………………………..29, 31

*Roe v. City of Waterbury,* 542 F.3d 31 (2d Cir. 2008)………………….…10, 32

*Rosu v. City of New York,* 2012 WL 6582534 (S.D.N.Y. Dec. 13, 2012)………...16

*Santos v. New York City*, 847 F.Supp.2d 573 (S.D.N.Y. 2012)………………….29

*Saucier v. Katz,* 533 U.S. 194 (2001)……………………………………………21

*Shmueli v. City of New York,* 424 F.3d 231 (2d Cir. 2005)………………………12

*Stewart v. Victoria's Secret Stores, LLC,*
2012 WL 976070 (E.D.N.Y. Mar. 19, 2012)……………………………………..34

*Sykes v. James,* 13 F.3d 515 (2d Cir. 1993)……………………………………11

*United Mine Workers v. Gibbs,* 383 U.S. 715 (1996)……………………………34

*Walczyk v. Rio,* 496 F.3d 139 (2d Cir.2007)…………………………………20, 23

*Walker v. City of New York,* 974 F.2d 293 (2d Cir.1992)………………………...28

*Warney v. Monroe County,* 587 F.3d 113, 120-21 (2d Cir. 2009)………………..13

*Zahrey v. Coffey,* 221 F.3d 342 (2d Cir. 2000)…………………………………15

## FEDERAL RULES OF CIVIL PROCEDURE
Rule 56(a)…………………………………………………………………………..9

## UNITED STATES CONSTITUTION

Fourth Amendment……………………………………………………………..11

Fourteenth Amendment…………………………………………………………...11

UNITED STATES STATUTES

28 U.S.C. § 1367…………………………………………………………………….34
42 U.S.C. § 1983…………………………………………………………………..passim

NEW YORK PENAL LAW

265.10[3]…………………………………………………………………..passim
265.00[22]…………………………………………………………………...passim
400.00[12]……………………………………………………………………8, 35

## Preliminary Statement

Plaintiff appeals from an adverse Memorandum and Order of the United States District Court granting defendants- Nassau County Defendants' motion-- for summary judgment and dismissing the complaint against them. This brief is submitted by the Nassau Defendants-Appellees: County of Nassau, former Nassau County District Attorney (and now United States Congresswoman) Kathleen M. Rice, Assistant District Attorney Elise McCarthy, Assistant District Attorney Karen Bennett, former Assistant District Attorney (now County Court Judge) Teresa Corrigan and Charles Ribando (the "County Defendants").

On February 16, 2011 nine members of defendant New York State Police Department ("NYSPD") arrested plaintiff and eight other individuals at a gun shop located in Seaford, New York named T&T Gunnery, Inc.  Plaintiff was video/sound recorded by an undercover NYSPD investigator ("UC 1") selling him, UC 1, an illegal assault weapon, *i.e.* a Rock River Arms LAR-15 rifle, Serial Number CM208678 (the "Rifle") in violation of New York Penal Law §§ 265.10(3) and 265(22)(a).   Plaintiff was transported to NYSPD Troop L Headquarters in Farmingdale, New York, arraigned in District Court in Hempstead the next morning, and released from custody.  On May 7, 2012, after a Grand Jury dismissed all criminal charges against T&T Gunnery, its owner and other employees, the District

Attorney's Office immediately dismissed all charges against plaintiff in the interests of justice.

In the Second Amended Complaint ("SAC") (JA-36) plaintiff asserts claims against the County Defendants under 42 U.S.C. § 1983 for false arrest, malicious prosecution, failure to supervise, a *Monell* claim, and state law claims for slander, libel and negligence. As New York State prosecutors, Rice, Bennett, McCarthy and Corrigan, as well as Ribando as Chief Investigator assisting in the prosecution of plaintiff, are entitled to absolute prosecutorial immunity from civil suit. Certainly, they are entitled to qualified immunity.

## OVERVIEW

Absolute immunity and qualified immunity apply to the official functions of the District Attorney and her Assistants. The Court below properly found for them on all claims asserted against them; and, the County Defendants cannot be liable for a false arrest since NYSPD, (the State), not the District Attorney's Office, arrested plaintiff. Further, even if the Court had deemed the District Attorney's Office responsible together with NYSPD for the arrest, there was sufficient "probable cause" (see *infra*) to arrest plaintiff for violation of the Penal Law prohibiting the sale of illegal assault weapons.

Most importantly, even if the Court denied both absolute immunity and qualified immunity (which it properly found), the County Defendants cannot be

2

liable for malicious prosecution, since there is absolutely no evidence of malice on the part of any County Defendant, and since there was probable cause to arrest plaintiff.

The failure to supervise claim also had to be dismissed since there is no evidence of any misconduct or unconstitutional action by any County Defendant, and further, since there is no evidence of the "deliberate indifference" to plaintiff's rights, a required element of such a claim.

There is no evidence of any municipal custom, policy or practice of the County or Rice violating the rights of Nassau County residents and any *Monell* claim had to be dismissed..  Further, the single incident of plaintiff's arrest, or even the arrests of plaintiff's codefendants, cannot be deemed a custom, policy or practice to support a *Monell* claim.  In addition, plaintiff cannot establish that any unconstitutional custom, policy or practice was the "moving force" behind his prosecution.

Finally, since all federal claims were dismissed, the Court properly declined to exercise supplemental jurisdiction over plaintiff's remaining state law claim which had no independent merit in any event.

It became evident in the trial court, and continued on this appeal, that Plaintiff disagrees with District Attorney Rice's legal beliefs regarding assault weapons.  He also unjustifiably asserts that her dislike for such weapons caused her to enforce

3

illegal claims against the gun marketers. This is totally untrue; completely unfounded in this record; and, is belied by the events and the answers at discovery. In this regard, the District Court Judge came to the only, and proper, conclusion- the DA was acting in her prosecutorial function in the presentation to the Grand Jury and the continuation of criminal proceeding until the Grand Jury did not issue a true bill. These are prosecutorial acts and they are immune from civil action. The law is clear on this point.

Additionally, the summary judgment motions were made after discovery in the case and when it was ready for trial. So, there was nothing more Plaintiff could know (evidence), before it responded to Defendants' motion. The Plaintiff and the trial court had all information relevant to the respective motions.

Plaintiff presents nothing in this appeal to support overturning the clearly correct legal analysis by this District Court Judge and his decision to dismiss the complaint. Some of the following analysis may be redundant but it shows how the actions of the Defendants are immune (quali9fied or absolute) under numerous legal holdings

## Statement of Facts

The Statement of Facts contained in Appellant's brief is intertwined with legal conclusions and assumptions obfuscating the truth. The salient events are not complex. The Memorandum and Order of the District Court recites all relevant facts

4

supporting it decision. It appears that Appellant has left out of the Appendix most, if not all, the necessary documents interposed by the County and relied upon by the Trial Judge. (See Appendix JA-543-544, pg vii); (See Docket # 131, 150). If the Appellant does not print those docket entries in a Supplemental Appendix, the Appellee will move this Court for permission to do so. However, the appealed order is very complete in its supporting authority.

On December 11, 2009 members of the Amityville Police Department, located in Suffolk County, New York, responded to a burglar alarm at the residence of an individual named "Ding Sang." Upon entering the house, the police observes a cache of weapons, including assault weapons, and immediately called NYSPD's Troop L Gun Investigation Unit ("GIU"). Members of the GIU, including defendant Joseph DeMaria, responded to the scene, called the homeowner, Ding Sang, secured the evidence, meaning the illegal weapons, and removed the evidence to be processed at Troop L Headquarters. NYSPD Troopers arrested Ding Sang on a charge of criminal possession of a weapon. He stated to members of the GIU, that one or more of his weapons were purchased from gun stores in Nassau County, including T&T Gunnery in Seaford. 56.1, ¶¶ 7-13. (Docket 131).

During the time period of 2009-2010 plaintiff, who was interested in buying T&T Gunnery from the owner, Martin Tretola, spent a considerable amount of time in the store behind the counter assisting customers, showing them guns, and

processing sales, including writing out sales receipts. *Id.* ¶¶ 14, 15, 32. (Docket 131, et. seq.).

After Ding Sang's arrest, DeMaria and NYSPD Senior Investigator Edward Franke ("Franke"), also assigned to the Troop L's Gun Investigation Unit, met with Nassau County Assistant District Attorney Teresa Corrigan ("Corrigan"), Bureau Chief of the Nassau County District Attorney's Office Street Narcotics and Gangs Bureau; Nassau County Assistant District Attorney Karen Bennett ("Bennett"), Deputy Chief of the Nassau County District Attorney's Office Street Narcotics and Gangs Bureau; and Charles Ribando, Chief Investigator of the Nassau County District Attorney's Office, to discuss that fact that Ding Sang purchased his illegal assault rifle from a Nassau County gun store, T&T Gunnery. The purpose of DeMaria's and Franke's presentation to the Nassau County District Attorney's Office was to prove that assault weapons were being sold illegally out of gun stores in Nassau County. *Id.* ¶ 17, 18. NYSPD, with funding from a New York State grant to the District Attorney's Office, then began in investigation into the sale of illegal assault weapons in Nassau County. *Id.* ¶¶ 27, 28.

Under New York Penal Law Article 265, entitled "Firearms and Other Dangerous Weapons," § 265.00[22], the version in effect in 2010-2011, an "assault weapon" is defined as "(a) a semiautomatic rifle that has an ability to accept a detachable magazine and has at least two of the following characteristics: (i) a

folding or telescoping stock; (ii) a pistol grip that protrudes conspicuously beneath the action of the weapon; (iii) a thumbhole stock; (iv) a second handgrip or a protruding grip that can be held by the non-trigger hand; (v) a bayonet mount; (vi) a flash suppressor, muzzle break, muzzle compensator, or threaded barrel designed to accommodate a flash suppressor, muzzle bread, or muzzle compensator; (vii) a grenade launcher." The seven (7) subsections of Penal Law § 265.00[22](a) are called "characteristics." *Id.* ¶¶ 19, 20. Based on the arrest of Ding Sang, and the information he provided after his arrest, the New York State Police Department suspected that certain gun stores in Nassau County, including T&T Gunnery, were selling semiautomatic rifles to non-law enforcement civilians, which rifles had been modified to appear to remove its illegal characteristics, but nonetheless constituted a banned "characteristic" assault weapon if those modifications were not permanent and could be readily reversed using common hand tools. The focus of the investigation was the easy reversibility of alleged permanent modifications made on New York State Penal Law classified assault weapons" sold by Nassau County gun dealers. *Id*. ¶¶ 23, 24.

On August 24, 2010 at 4:39 p.m. a New York State Police undercover investigator ("UC 1") entered T&T Gunnery and, as captured in a video/sound recording on a camera worn by UC 1, UC 1 purchased from plaintiff a Rock River Arms LAR-15 assault weapon in exchange for $1,053.55, who was behind the

7

counter.  Plaintiff handed the rifle to UC 1, and discussed the features and method of operating the rifle with UC 1. In his deposition conducted November 6, 2013, UC 1 was asked, "Who did you deal with [on August 24, 2010 at T&T Gunnery], and responded, "Mr. Sanseviro."  UC 1 further testified at his deposition, when asked, "In your opinion, what was Mr. Sanseviro's role in your purchase?" he responded, "He sold me the gun."  Plaintiff gave UC 1 a signed receipt for UC 1's purchase of the rifle from plaintiff.  Ex. O, Receipt dated August 24, 2010 from T&T Gunnery for purchase of a Rock River LAR-15.  *Id.* ¶¶ 29-32.  UC 1 brought the Rock River LAR-15 to Troop L Headquarters, where Franke tested the rifle.  As recorded in his "Pin & Muzzle Break Removal Notes", Franke wrote: "Wrench off muzzle break revealing threaded barrel on and Depress collapsible stock adjustment lever, struck collapsible stock into ground forcing pin to move down the tube[,] causing pin to become dislodged,  The collapsible stock now works properly." *Id. ¶¶* 34-35.

On February 16, 2011 plaintiff was arrested by members of the New York State Police Department while at T&T Gunnery by NYSPD and charged with violation of Penal Law § 265.10[3], Manufacture, Transport, Disposition and Defacement of Weapons and Dangerous Instruments and Appliances, as well as violation of Penal Law § 400.00[12], Licenses to Carry, Possess, Repair and Dispose of Firearms for selling the Rock River Arms LAR-15 to UC 1 on August 24, 2010. *Id.* ¶ 37.  On May 7, 2012 the Grand Jury voted no "true bill" and dismissed the

charges against T&T Gunnery, Tretola and his employees. Once the case was dismissed by the Grand Jury, the District Attorney's Office considered that, in the interests of justice, it was appropriate to dismiss the charges against plaintiff as well. Ex. H, Bennett Dep. 61:5-11; Ex. X, Certificate of Disposition of Dismissal by Grand Jury. That same day, May 7, 2012, McCarthy sent a letter to plaintiff informing him that the charges against him were dismissed. *Id*. ¶¶ 62-63.

**THE DECISION**

Based on the facts, the Court granted summary judgment to the movant, County Defendants, and dismissed the Complaint. It found in a very complete opinion that the defendants acted in the professional prosecutor roles and were entitled to immunity. It recited all salient facts and concluded at a minimum there may be a legal dispute as to the exact details of the appropriate Penal Statute but reasonable persons were find the defendants acted properly with probable cause. And further, the Da and ADAs were prosecutors doing prosecutors work.

**<u>Legal Standard for Summary Judgment</u>**

Summary judgment is appropriate where the admissible evidence and the pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed .R. Civ. P. 56(a). A dispute over an issue of material fact qualifies as genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

9

*Inc.,* 477 U.S. 242, 248 (1986); *accord Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir. 2008). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex,* 477 U.S. at 322–23); *accord PepsiCo, Inc. v. Coca-Cola Co.,* 315 F.3d 101, 105 (2d Cir. 2002). To defeat a motion for summary judgment, the non-moving party must advance more than a "scintilla of evidence," *Anderson,* 477 U.S. at 252, and demonstrate more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The non-moving party "cannot defeat the motion by relying on the allegations in [its] pleading or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange,* 84 F.3d 511, 518 (2d Cir. 1996) (citation omitted).

## POINT I

## ALL COUNTY DEFENDANTS ARE ENTITLED TO ABSOLUTE IMMUNITY AGAINST ALL CLAIMS ASSERTED AGAINST THEM

The SAC asserts six federal causes of action against the County Defendants under §1983, plus seven state law claims. Based on absolute prosecutorial immunity or, at the least, qualified immunity, all federal claims should be dismissed on summary judgment. The County Defendants will first address the federal claims, and then argue that since all federal claims should be dismissed, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

In order to bring a § 1983 claim, a plaintiff must demonstrate that (1) "[t]he conduct at issue '[was] committed by a person acting under color of state law,' " and (2) that the conduct " 'deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.' " *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir. 2010), *cert. denied sub nom Cornejo v. Monn,*131 S.Ct. 158 (2010) (quoting *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993). Plaintiff's first cause of action under § 1983 asserts false arrest as violations of his Fourth and Fourteenth Amendments. SAC, ¶¶ 104-117. The second cause of action is for malicious prosecution, asserting that "The prosecution of plaintiff by Defendants was conducted under color of state law within the purview

of 42 U.S.C. § 1983." *Id*., ¶ 127. Plaintiff's third and fourth causes of action, for "failure to supervise," assert violations of "the Fourteenth and other Amendments related to the sale and ownership of long arms." *Id.*, ¶¶ 136-137, ¶¶ 147-148. The sixth cause of actions asserts a § 1983 *Monell* claim, *id*., ¶¶ 184-200, and the twelfth cause of action is asserted under the Fourteenth Amendment for violation of procedural due process rights, *id*., ¶¶ 211-214.

As prosecutors representing New York State, Rice, Bennett, Corrigan and McCarthy are entitled to absolute prosecutorial immunity from civil suit for all claims asserted against them in the SAC. " 'It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York,* 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman,* 424 U.S. 409, 410 (1976) (citation and quotation marks omitted)). "[D]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery.... This is because '[a]n absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Crews v. County of Nassau*, 2007 WL 4591325, at *13 (E.D.N.Y. Dec. 27, 2007) (quoting *Deronette v. City of New York,* 2007 WL 951925 (E.D.N.Y. Mar. 27, 2007) (citing

12

*Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) and quoting *Imbler,* 424 U.S. at 419 n. 13).

In addition, Chief Investigator Ribando is also entitled to absolute prosecutorial immunity. Absolute immunity also shields the investigator defendants. *See Hill v. City of New York,* 45 F.3d 653, 660 (2d Cir. 1995) (absolute immunity applies to "employees who assist [the prosecutor] and act under [the prosecutor]'s direction in performing functions closely tied to the judicial process[.]") *Jackson v. Seewald*, 2013 WL 149341, at *7 (E.D.N.Y. Jan. 14, 2013). . *See also Del Col v. Rice*, 2012 WL 6589839, at *4 (E.D.N.Y. Dec. 18, 2012)( " '[P]rosecutors are absolutely immune from liability under § 1983 for their conduct in initiating a prosecution and in presenting the State's case.' quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991), and citing *Warney v. Monroe County,* 587 F.3d 113, 120–21 (2d Cir. 2009)]. The immunity extends not only to the District Attorney but to all employees engaged with the judicial process."

Absolute immunity bars a civil suit against a prosecutor (and Ribando) for advocatory conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. This immunity attaches to conduct in court, as well as conduct "preliminary to the initiation of a prosecution and actions apart from the courtroom." *Id.* at 431 n. 33. *See also Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012). An official claiming immunity bears the burden of showing

that the particular immunity claimed applies. *See Burns,* 500 U.S. at 486–87. In determining whether absolute prosecutorial immunity attaches, courts apply a "functional approach." *Hill,* 45 F.3d at 660. "Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.' " *Id.* at 661 (quoting *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994). The Supreme Court has explained that a prosecutor's functions preliminary to the initiation of proceedings include "whether to present a case to a grand jury, whether to file an information, whether and when to prosecute, whether to dismiss an indictment against particular defendants, which witnesses to call, and what other evidence to present." *Imbler,* 424 U.S. at 431 n. 33.

Analysis of a claim of immunity requires the court to view the relevant circumstances as would a reasonable official in the claimant's position. *See Hill,* 45 F.3d at 662 ("[T]he 'functional' test for absolute immunity is an objective one; it does not depend upon the state actor's subjective intent."); *Dory,* 25 F.3d at 83. *See also Burns*, 500 U.S. at 487-88. "The relevant question, therefore, is whether a reasonable prosecutor would view the acts challenged by the complaint as reasonably within the functions of a prosecutor. If the generic acts are within those functions, absolute immunity applies to protect the prosecutor even in the face of a complaint's allegations of malicious or corrupt intent behind the acts. *See id.* at 489-90. Otherwise, "the absolute immunity would not be absolute." *Giraldo*, 694 F.3d

14

at 166. Moreover, "harm that the conduct may have caused or the question whether it was lawful" is irrelevant to whether absolute immunity applies. *Buckley v. Fitzsimmons*, 509 U.S. 259, 271-72 (1993). "[T]he extent of [prosecutorial] immunity always depends upon the nature of the activity in question, and not upon how wrongly the particular actors may have performed that activity in a specific instance." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1150 (2d Cir. 1995) (holding district attorneys absolutely immune from claim for malicious prosecution and presentation of false evidence to the grand jury).

"The line between a prosecutor's advocacy and investigating roles might sometimes be difficult to draw." *Zahrey v. Coffey,* 221 F.3d 342, 347 (2d Cir. 2000). In *Zahrey,* the Second Circuit noted that "a prosecutor's conduct prior to the establishment of probable cause should be considered investigative: 'A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested' " *Id.* at 347 n. 2 (quoting *Buckley,* 509 U.S. at 274; *see also Hill*, 45 F.3d at 661 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts."). "[T]he mere fact that a prosecutor might later convene a grand jury and obtain an indictment does not automatically serve to cloak his prior investigatory actions with the protection of absolute immunity." *Anilao v. Spota,* 774 F. Supp.2d 457, 477 (E.D.N.Y. 2011). "The burden is on the party

asserting absolute immunity." *Bertuglia v. City of New York,* 839 F.Supp.2d 703, 731 (S.D.N.Y. 2012). "The Supreme Court has identified evaluating evidence and interviewing witnesses as falling on the absolute immunity side of the line, leaving searching for the clues and corroboration that might lead to a recommendation for an arrest on the qualified immunity side." *Giraldo*, 694 F.2d at 166 (quotation marks and citations omitted).

Applying the functional test to the allegations of the SAC, Rice, Bennett, Corrigan and McCarthy are entitled to absolute prosecutorial immunity for all of their actions taken with respect to plaintiff. Plaintiff alleges at ¶ 27 of the SAC that "[B]efore August 24, 2010, possibly as early as April 2010, the NCDA [District Attorney] and the NYSPD [State Police], under the direction of RICE, [REDACTED], INVSTIGATOR [REDACTED], BENNETT, CORRIGAN and RIBANDO, the COUNTY and STATE *began an investigation* of T&T Gunnery along with other stores for allegedly selling semi-automatic rifles in violation of Section265.10(3) and 265(22) of the Penal Law of the State of New York.") (emphasis added). This is *exactly* the function of a prosecutor, who is entitled to absolute immunity. "[I]nvestigative acts reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution . . . are shielded by absolute immunity when done by prosecutors." *Giraldo*, 694 F.3d at 166. *See also Rosu v. City of New York*, 2012 WL 6582534, at *7 (S.D.N.Y. Dec. 13, 2012) ("It is

true that absolute immunity for investigatory acts are appropriate when they are 'reasonably related to decisions whether or not to begin or to carry on a particular criminal prosecution, or to defend a conviction.' ") (quoting *Giraldo*). Thus, even if the Court were to credit plaintiff's claim that the evidence shows the County Defendants participated with the New York State defendants in investigating the sale of illegal assault weapons in Nassau County, nevertheless, these investigatory acts are included within the protection of absolute prosecutorial immunity.

Plaintiff further alleges that "STATE, NYSPD, COUNTY and NCDA began to modify, alter, deface and change one, some or all of the purchased rifles, include the Rifle [sold by plaintiff to UC 1], to convert them from legal to illegal under Penal Law § 265(22)." SAC, ¶ 48; *see also* SAC ¶¶ 49-52 (alleging physical alteration of the Rifle). Finally, plaintiff asserts that the State and County Defendants' "plan to fabricate, construct, alter and modify the Rifle and present it as evidence was done with malice" and "intentionally," *id.*, ¶¶ 54-55. However, even if the evidence establishes the truth of these claims (which is not conceded), the County Defendants are still entitled to absolute immunity.

"[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate. This would even include, for purposes of this case, allegedly conspiring to present false evidence at a criminal trial. The fact that such a conspiracy is certainly not

17

something that is *properly* within the role of a prosecutor is immaterial, because "[t]he immunity attaches to his function, not to the manner in which he performed it." *Dory*, 25 F.3d at 83 (emphasis in original); *Kent v. Cardone,* 404 Fed. Appx. 540, 542–43 (2d Cir. 2011) (holding prosecutor entitled to absolute immunity for "'initiating a prosecution,' as well as for his performance of tasks as an advocate in the conduct of the prosecution." (internal citations omitted)). *See also Buckley,* 509 U.S. at 274 n. 5 (acknowledging that absolute immunity shields "a prosecutor's decision to bring an indictment, whether he has probable cause or not"), or that the ADA defendants presented false evidence and withheld exculpatory evidence from the grand jury. *See also Hill,* 45 F.3d at 661 (prosecutor's alleged acts of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" were "clearly protected by the doctrine of absolute immunity"); *Kent,* 404 Fed. Appx. at 544 (noting prosecutors are entitled to immunity for their conduct in front of grand jury even if it is "wildly inappropriate and may furnish grounds for a finding of prosecutorial misconduct"), or at trial. *See also Jackson*, 2013 WL 149341 at *7; *Anilao* 774 F. Supp. 2d at 479 (collecting cases); *Bernard v. County of Suffolk*, 356 F.3d 495, 503 2d Cir. 2004) ("Plaintiffs further accuse defendants of knowingly presenting false evidence to, while at the same time withholding exculpatory evidence from, the various grand juries that returned these flawed indictments. Well

established case law recognizes such conduct to lie at the very core of a prosecutor's role as an advocate engaged in the judicial phase of the criminal process.").

Accordingly, the County Defendants are absolutely immune from all claims asserted against them in the SAC, including any investigative activity, and even for allegedly preparing or presenting false or fabricated evidence. In sum, summary judgment should be granted dismissing all federal claims on the ground of absolute prosecutorial immunity.

## POINT II

### EVEN IF THE COUNTY DEFENDANTS ARE NOT PROTECTED BY ABSOLUTE IMMUNITY, THEY ARE PROTECTED BY QUALIFIED IMMUNITY

Even if a Court had determined that the County Defendants were not entitled to absolute immunity from suit against a claim of malicious prosecution, they are nevertheless entitled to qualified immunity. *See Hill,* 45 F.3d at 661 ("Before any formal legal proceeding has begun and before there is probable cause to arrest, it follows that a prosecutor receives only qualified immunity for his acts.").

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'

" *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,*

457 U.S. 800, 818 (1982)). As the Second Circuit has described the doctrine:

> A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was "objective[ly] legal[ly] reasonable[ ] ... in light of the legal rules that were clearly established at the time it was taken.").

*Munafo v. Metropolitan Transportation Authority,* 285 F.3d 201, 210 (2d Cir. 2002)

(alterations in original) (citations omitted) (quoting *Anderson v. Creighton,* 483 U.S.

635, 639 (1987).  The Supreme Court recently explained that, "[t]o be clearly

established, a right must be sufficiently clear 'that every reasonable official would

[have understood] that what he is doing violates that right.' " *Reichle v. Howards,* –

— U.S. ——, 132 S.Ct. 2088, 2093 (2012) (second alteration in original) (quoting

*Anderson,* 483 U.S. at 640). Although a case directly on point is not required,

"existing precedent must have placed the statutory or constitutional question beyond

debate." *Fabrikant v. French,* 691 F.3d 193, 213 (2d Cir. 2012) (internal quotation

mark omitted) (quoting *Ashcroft v. al-Kidd,* —— U.S. ——, 131 S.Ct. 2074, 2083

(2011)).  Moreover, "[e]ven if the right at issue was clearly established in certain

respects ..., an officer is still entitled to qualified immunity if 'officers of reasonable

competence could disagree' on the legality of the action at issue in its particular

factual context." *Walczyk v. Rio,* 496 F.3d 139, 154 (2d Cir.2007) (quoting *Malley*

*v. Briggs,* 475 U.S. 335, 341 (1986)); *see also Hope v. Pelzer,* 536 U.S. 730, 739 (2002) ("[Q]ualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.") (quoting *Saucier v. Katz,* 533 U.S. 194, 206 (2001)). "Qualified immunity thus affords government officials 'breathing room' to make reasonable—even if sometimes mistaken—decisions and 'protects all but the plainly incompetent or those who knowingly violate the law' from liability for damages." *DiStiso v. Cook,* 691 F.3d 226, 240 (2d Cir. 2012) (citations omitted) (quoting *Messerschmidt v. Millender,* —— U.S. ——, 132 S.Ct. 1235, 1244 (2012)). Therefore, "[w]hether qualified immunity applies in a particular case 'generally turns on the objective legal reasonableness' of the challenged action, 'assessed in light of the legal rules that were clearly established at the time it was taken.' " *Id.* (quoting *Messerschmidt,* 132 S.Ct. at 1245).

Under the foregoing guidelines, the County Defendants are entitled to qualified immunity. Plaintiff alleges that "Despite knowing that the conduct allegedly engaged in by SANSEVIRO was entirely lawful and based on doctored evidence, all Defendants . . . "knowingly, willfully, and intentionally initiated a criminal proceeding against SANSEVIRO on fabricated evidence and false charges[.]" SAC, ¶ 87. Plaintiff further alleges that "Despite knowing that the conduct allegedly engaged in SANSEVIRO was entirely lawful," the County

Defendants "knowingly, willfully and intentionally continued to prosecute the charges against SANSEVIRO[.]", *id*., ¶ 88.

Ultimately, what this claim comes down to is that the County Defendants' interpretation of § 265.00[22][a] is different from plaintiff's interpretation. Plaintiff is wrong and the record is unambiguous in this regard. As clearly set forth in Bennett's July 29, 2011 Inter-Departmental Memo (Ex. L), in working with the State Defendants to eliminate the sale of illegal assault weapons in Nassau County, the County Defendants were simply seeking to enforce the New York State assault weapons ban by arresting plaintiff based on evidence obtained by the State Defendants. That evidence, the Rifle plaintiff sold to UC 1, was a semi-automatic rifle which was easily convertible into an illegal assault rifle with two or more offending characteristics. *See* Ex. Q, Franke's "Pin & Muzzle Break Removal Notes" in which he wrote of testing the Rifle: "Wrench off muzzle break revealing threaded barrel on and Depress collapsible stock adjustment lever, struck collapsible stock into ground forcing pint to move down the tube[,] causing pin to become dislodged, The collapsible stock now works properly." In addition, the Operability Test (Ex. U) proved that the rifle sold by plaintiff operated as it left T&T Gunnery.

The simple fact that modification or alteration *could* make the rifles illegal compels the logical conclusion (1) that it was either not clearly established that such action violated plaintiff's rights, (2) in light of the legal rules that were clearly

established, the County Defendants' actions were objectively legally reasonable, or (3) both. *Munafo*, 285 F.3d at 210. At the very least, prosecutors of reasonable competence could disagree on the legality of the County Defendants' actions in the particular factual context of this case. *Walczyk*, 469 F.3d at 154. Therefore, even if the County Defendants are not entitled to absolute immunity, they are entitled to qualified immunity against the claim for malicious prosecution.

Accordingly, the District Court properly and correctly found that the defendants were entitled to immunity and these claims had to be dismissed.

## POINT III

### THE COUNTY DEFENDANTS CANNOT BE LIABLE FOR FALSE ARREST

And, further, even if the Court had denied absolute or qualified immunity to the County Defendants, they cannot be liable for false arrest, since it was the New York State Police, not the County Defendants, who arrested plaintiff. Plaintiff alleges, "Because the NYSPD and NCDA lacked reasonable suspicion, probable cause, a valid arrest warrant, or any other valid legal reasons to effectuate the arrest of Plaintiff, this arrest and the actions of the Defendants amounted to unlawful arrest and imprisonment." SAC, ¶ 114. However, plaintiff's indiscriminate use of the collective "defendants" as arresting him is clearly refuted by documentary evidence, *i.e.*, the State Police "Defendant Information" (Ex. R), and the Troop L Headquarters

23

Farmingdale Booking Data Sheet dated February 16, 2011 (Ex. T) generated by the State Police in processing plaintiff's arrest. In addition, the Felony Complaint was sworn to by State Police Investigator Franke (Ex. S). Thus, the evidence establishes that the State Police, not the County Defendants, arrested plaintiff, and the false arrest claim against the County Defendants should be dismissed.

## POINT IV

### THE COUNTY DEFENDANTS CANNOT
### BE LIABLE FOR MALICIOUS PROSECUTION

Even if the Court were to deny absolute or qualified immunity to the County Defendants, they cannot be liable for malicious prosecution, asserted in the second cause of action, SAC ¶¶ 118-131. Plaintiff claims that "[T]he prosecution of SANSEVIRO was initiated by the COUNTY and NCDA with malice and without any legal basis," *id.*, ¶124, and that the County Defendants "knowingly, willfully and intentionally continued to prosecute the charges against SANSEVIRO based on false evidence and false testimony." *Id.*, ¶ 28. Based on applicable case law, this claim should be dismissed on summary judgment.

"To establish a malicious prosecution claim under New York law, a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for

defendant's actions." *Manganiello v. City of New York,* 612 F.3d 149, 161 (2d Cir. 2010) (internal quotation marks and citations omitted).  " '[M]alice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding *due to a wrong or improper motive, something other than a desire to see the ends of justice served.*' " *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996) (citation omitted) (emphasis added).

In this case, there is absolutely no evidence that the County Defendants acted out of malice, *i.e.*, any wrong or improper motive, or something other than their desire to see the end of justice served, in prosecuting plaintiff for selling the Rifle to UC 1 on August 24, 2010.  Instead, the documentary evidence (Ex L, Inter-Departmental Memo) and deposition testimony of Bennett and Corrigan (Exs. H, N) establish that the County Defendants acted at all times in good faith, and out of a desire to see the ends of justice served, in seeking to prosecute plaintiff and others for selling what, in the opinion of all defendants in this case, were illegal "characteristic"  assault weapons.

Furthermore, although "probable cause to initiate a criminal proceeding may be so totally lacking as to reasonably permit an inference that the proceeding was maliciously instituted."  *Pacicca v. Stead*, 456 Fed. Appx. 9, 13 (2d Cir. 2011), the prosecution of plaintiff was wholly based on the probable cause set forth in Franke's

Felony Complaint (Ex. S), detailing exactly how the Rifle was easily rendered an illegal "characteristic" assault weapon by common household tools. It is hornbook law that probable cause to arrest is a complete defense to a claim of malicious prosecution. *See*, *e.g. Manganiello,* 612 F.3d at 161–62 ("The existence of probable cause is a complete defense to a claim of malicious prosecution in New York[.]")

Further evidence of good faith of the County Defendants is that the very same day when criminal charges against Tretola and T&T Gunnery were dismissed by the Grand Jury on May 7, 2012, the County Defendants immediately dismissed the charges against plaintiff in the interests of justice. *See* Ex. H, Bennett testimony, pp. 61:5-11; Ex. X, Certificate of Disposition, and Ex. Y, letter from McCarthy to plaintiff advising him that the charges were dismissed.

Therefore, there is absolutely no evidence in this case of malice on the part of any County Defendant, and there was probable cause to prosecute plaintiff. Thus, even if absolute or qualified immunity is denied, the malicious prosecution claim should be dismissed.

## POINT V

## THE FAILURE TO SUPERVISE CLAIMS ARE MERITLESS

The SAC's third and fourth causes of action, for failure to supervise against the County and Rice, should be dismissed on summary judgment. Plaintiff alleges that the "County intentionally failed to supervise, oversee, monitor and/or control

26

RICE and/or her subordinates in the NCDA . . . as to prevent the misconduct and unconstitutional actions which harmed the Plaintiff." SAC, ¶ 134. Similarly, plaintiff claims that "Rice intentionally failed to adequately supervise, oversee, monitor and/or control the personnel working for her in the NCDA, such as McCarthy and other Assistant District Attorneys, as to prevent the misconduct and unconstitutional actions which harmed the Plaintiff who had not committed a crime." *Id.*, ¶ 144.

The fatal flaw defeating these claims is that there is no evidence of any misconduct or unconstitutional activity by the individual County Defendants, who simply performed their duties in initiating a prosecution and in presenting the State's case. *See* Point I, *supra*. The individual County Defendants simply fulfilled their roles as prosecutors (including Ribando, as Chief Investigator) in interpreting and enforcing what they perceived, in their discretion, to be violations of the Penal Law covering the sale of illegal assault rifles. Even if Court were to find that the County Defendants' interpretation and enforcement of § 265.00[22] was mistaken, they are nevertheless protected by qualified immunity, *see* Point II, *supra*.

As to the County itself, the inadequacy of municipal employee training may serve as the basis for § 1983 liability only where the failure to train or supervise amounts to deliberate indifference to the rights of persons with whom the employees come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Thus, "a

municipality can be liable under § 1983 only where its policies are the 'moving force' behind the constitutional violation.  Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483-484 (1986).  "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality - a 'policy' as defined by [the Supreme Court's] prior cases - can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389.

The Second Circuit has set out three requirements which must be met before a municipality's failure to act constitutes deliberate indifference to the rights of citizens: first, that a policymaker knows " 'to a moral certainty' " that his or her employees will confront a given situation; second, " 'that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation' "; and third, " 'that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.' " *Jenkins v. City of New York,* 478 F.3d 76, 94 (2d Cir. 2007) (quoting *Walker v. City of New York,* 974 F.2d 293, 297–

28

98 (2d Cir.1992)); *see also Reynolds v. Giuliani,* 506 F.3d 183, 190 (2d Cir. 2007) (finding deliberate indifference "where the need to act is so obvious, and the inadequacy of current practices so likely to result in a deprivation of federal rights"); *Santos v. New York City,* 847 F.Supp.2d 573, 577 (S.D.N.Y. 2012) (dismissing claim for failure to show that city's actions amounted to deliberate indifference). The Supreme Court also has noted, however, that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," and that "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson,* 131 S.Ct. 1350, 1359-60 (2011) (internal quotation marks omitted).

In this case, there is absolutely no evidence that any County Defendant, including Rice herself, acted with "deliberate indifference" to plaintiff's rights, or the rights of any other Nassau County resident, as defined by the Second Circuit in *Jenkins.* There is no evidence whatsoever of a history of any member of the District Attorney's Office engaging in unconstitutional conduct with respect to their interpretation and enforcement of § 265.00[22], such that the County, or Rice herself for that matter, knew or should have known that their conduct would result in a constitutional violation (which never occurred). Therefore, the claims of failure to train supervise should be dismissed on summary judgment.

29

## POINT VI

## THERE IS NO *MONELL* CLAIM

Plaintiff's sixth cause of action is a claim against the County and also Rice herself under *Monell v. Dep't of Soc. Serv. of City of N.Y.*, 436 U.S. 658 (1978) asserting "it was the custom, policy and practice of the COUNTY and NCDA, including Rice as the COUNTY's policy maker, to tolerate, condone and encourage constitutional violations, such as those alleged by plaintiff above, by encouraging misconduct and failing to properly punish, charge, reprimand and investigate allegations and incidents of misconduct." SAC, ¶ 185. Plaintiff further alleges that employees of the County and the District Attorney's Office "were aware at all times alleged in this Complaint that their unconstitutional conduct was acceptable, encouraged, condoned and that they would receive no reprimand or be punished for their conduct and further that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions or the cost to the taxpayers of Nassau County." *Id.*, ¶ 186. However, the years-long process of discovery, including at least fifteen (15) depositions and over 5,000 pages of discovery, has produced no evidence whatsoever to support a valid *Monell* claim.

To prevail on a § 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick*,

131 S.Ct. at 1359 ), *cert. denied*, ––– U.S. ––––, 132 S.Ct. 1741 (2012); *see also Monell,* 436 U.S. at 690–91. "Local governing bodies ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell,* 436 U.S. at 690–91 (internal citations omitted). The County, as a municipal entity, may only be held liable under § 1983 when the alleged *unlawful* action was implemented or executed pursuant to a governmental policy or custom. *See Monell*, 436 U.S. at 694; *Reynolds*, 506 F.2d at 190.

The fatal flaw in plaintiff's *Monell* claim is that is it all premised upon prosecutorial activity for which Rice is protected from liability by absolute prosecutorial immunity. *See* Point I, *supra*. The County and Rice are therefore protected from *Monell* liability because all of the actions alleged in the SAC arose out of, and were involved with the State Police Department's investigation into and arrest of plaintiff, while the County Defendants' actions, including any participation in the investigation, are all prosecutorial duties which provide absolute prosecutorial immunity, or at least qualified immunity. As a consequence, any protected activity undertaken by Rice cannot result in *Monell* liability against the County, since a municipality cannot be held liable in a § 1983 action under a theory of *respondeat superior*. *Monell*, 436 U.S. at 691. There simply is no unconstitutional conduct by

any County Defendant.  In sum, since Rice's actions were all lawful, the County cannot be liable under for any "unlawful" policy or custom.

In addition, the single incident of the plaintiff's arrest cannot support his claim of a custom, policy or practice which would hold the Nassau County or Rice liable under *Monell.  See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-34 (1985), where the court held:

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

There is absolutely no evidence to support plaintiff's claim of a *repeated* policy or custom resulting in any constitutional deprivation to support his *Monell* claim against Nassau County or Rice, even considering that other defendants were arrested with plaintiff on February 16, 2011.  Moreover, there is no evidence that such a custom, policy or practice was the "moving force" behind plaintiff's arrest and prosecution.  "[A] plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." *Roe v. City of Waterbury,* 542 F.3d 31, 37 (2d Cir. 2008) (citation omitted).  *See also Batista*

*v. Rodriguez,* 702 F.2d 393, 397 (2d Cir. 1983) ("Absent a showing of a causal link between an official policy or custom and the plaintiffs' injury, *Monell* prohibits a finding of liability against the City."); *Johnson v. City of New York,* 2011 WL 666161, at \*3 (S.D.N.Y. 2011) (noting that after demonstrating the existence of a municipal policy or custom, "a plaintiff must establish a causal connection—an affirmative link—between the policy and the deprivation of his constitutional rights" (internal quotation marks omitted)). "A direct causal link between a municipal policy or custom and the alleged constitutional deprivation" must be established. *City of Canton,* 489 U.S. at 385.

In this case, there is no evidence that any unconstitutional custom, policy or practice was the moving force behind plaintiff's prosecution, or that such custom, policy or practice is causally connected to any constitutional deprivation. Thus, the *Monell* should be dismissed.

## POINT VII

## IT WAS RIGHT TO DISMISS THE STATE CLAIMS

The remaining causes of action asserted against the County Defendants, for state law false arrest, state law malicious prosecution, state law failure to supervise, libel, slander and negligence should all be dismissed on summary judgment since

the County Defendants are protected by either absolute or qualified immunity, *see* Points I and II, *supra*, or for the reasons set forth in Point III (false arrest), Point IV (malicious prosecution), Point V (failure to supervise) and Point VI (*Monell* claim).

With respect to the state law claims for libel, slander and negligence, SAC ¶¶ 215-245, in order to entertain these claims, the Court must exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. This statute provides, in pertinent part: "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... (3) the district court has dismissed all claims over which it has original jurisdiction." In addition, the Second Circuit has stated that "if [a]ll federal claims are dismissed *before trial* ..., the state claims should be dismissed as well." *Motorola Credit Corporation v. Uzan,* 388 F.3d 39, 56 (2d Cir. 2004) (quoting *Castellano v. Bd. of Trustees,* 937 F.2d 752, 758 (2d Cir. 1991)) (emphasis added in *Motorola* ). *See also United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1996) (where federal claims are dismissed before trial, state claims should be dismissed as well); *Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000); *Stewart v. Victoria's Secret Stores, LLC*, 2012 WL 976070 (E.D.N.Y. Mar. 19, 2012) (where federal claims were dismissed under Rule 12(b)(6), Court declined to exercise supplemental jurisdiction over state law claims).

Since all federal claims were properly dismissed, the Court correctly declined to exercise supplemental jurisdiction, and dismissed the Complaint in its entirety.

But, in any event, the Court properly found there is no basis for any state claims per se based on the totality of events presented.

## SUMMARY

The Court was diligent and succinct in analyzing every claim made by plaintiff and decided that no such claims are viable against the DA and the ADAs and their chief. Judge Wexler concluded and summarized:

> "Upon consideration, the Court concludes that the record, viewed in the totality of the circumstances, establishes the existence of "arguable probable cause" to charge Sanseviro for sale of the Rifle in violation of § 400.00(12). Specifically, officials of reasonable competence could disagree on whether there was probable cause for this charge, as it was reasonable for Investigator Franke and the individual County Defendants to believe: (1) that Sanseviro was an employee of T&T Gunnery and he "sold" the Rifle; (2) that Investigator Franke did not unlawfully modify the Rifle or otherwise fabricate evidence; (3) that the Rifle, upon Investigator Franke's testing, revealed certain characteristics such that it was an assault weapon under New York law, namely § 265.00(22)(a); (4) that probable cause existed to charge a violation of § 400.00(12) (for selling a firearm without first requiring the buyer to produce proof that the buyer is an exempt person), particularly in light of the substantial uncertainty as to the meaning and interpretation of § 265.00(22)(a), as applied to the sale of the Rifle by a licensed dealer to non-law enforcement civilians; and (5) that no new information learned subsequent to the arrest eliminated that probable cause.
>
> As for the charged violation of § 265.10(3), that provision makes it a crime for "[a]ny person…to dispose[] of any…assault weapon." N.Y. Penal Law § 265.10(3).

Nevertheless, § 265.20(a) provides various exemptions
from the application of § 265.10(3). One such exemption
is for a "dealer in firearms." *See* N.Y. Penal Law §
265.20(a)(10). The parties acknowledge that T&T
Gunnery is a "dealer in firearms," as defined in §
265.00(9), seemingly exempt from § 265.10(3) by virtue
of 265.20(a)(10). Defendants argue, however, that they
reasonably believed that uncertainty existed as to whether
a "dealer in firearms" was exempt from § 265.10(3) with
respect to the sale of an "assault weapon" because §
265.20(a)(16) provides that the term "firearm" as "used in
paragraph []…ten [*i.e.,* § 265.20(a)(10)] shall not
include…an assault weapon, N.Y. Penal Law §
265.20(a)(16). *See, e.g.,* Plaintiff's Ex. 9. Upon
circumstances, establishes the existence of "arguable
probable cause" to charge Sanserviro for sale of the Rifle
in violation of § 265.10(3). Specifically, officials of
reasonable competence could disagree on whether there
was probable cause for this charge, as it was reasonable
for Investigator Franke and the individual County
Defendants to believe: (1) that Sanserviro was an
employee of T&T Gunnery and he "sold" the Rifle; (2)
that Investigator Franke did not unlawfully modify the
Rifle or otherwise fabricate evidence; (3) that the Rifle,
upon Investigator Franke's testing, revealed certain
characteristics such that it was an assault weapon under
New York law, namely § 265.00(22)(a); (4) that probable
cause existed to charge a violation of § 265.10(3) for
selling an assault weapon, particularly in light of the
substantial uncertainty as to the meaning and
interpretation of § § 265.00(22)(a), 265.20(a)(10), and
265020(a)(16), as applied to the sale of the Rifle by a
licensed dealer to non-law enforcement civilians; and (5)
that no new information learned subsequent to the arrest
eliminated that probable cause. Thus, the malicious
prosecution claim must be dismissed as against
Investigator Franke and the individual County Defendants
based qualified immunity." (SPA-14-15).

## **CONCLUSION**

For all the foregoing reasons, the Memorandum and Order of the United States District Court, Eastern District of New York (Wexler, J.) dated January 25, 2016, granting summary judgment and dismissing the complaint should be affirmed in all respects, together with costs and disbursements.

Dated:  Mineola, New York
       August 24, 2016

                                     **CARNELL T. FOSKEY**
                                     Nassau County Attorney
                                     Attorney for Defendants
                                     County of Nassau-Appellees,
                                     Kathleen M. Rice,
                                     Elise McCarthy, Karen Bennett,
                                     Teresa Corrigan and
                                     Charles Ribando

                      By:   /s/_____
                                       Robert F. Van der Waag
                                     Deputy County Attorney
                                     1 West Street
                                     Mineola, N.Y. 11501
                                     (516) 571-3954

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 8, 831 words according to the word count feature in Microsoft Word 2010, excluding the parts of the brief exempted by Fed. R. App. 32(a) (7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman size 14 point font (12 point font in footnotes).


s/Robert F. Van der Waag
Attorney for Nassau County Appellees


Dated: August 26, 2016